UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

NORMAN WILLIAMSON,
    Plaintiff,

Case No. 1:16-cv-583
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

REPORT AND
RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's Statement of Errors (Doc. 12) and the Commissioner's response in opposition (Doc. 17).

## I. Procedural Background

Plaintiff filed an application for DIB on March 11, 2013, alleging disability since January 1, 2013, due to degenerative disc disease, arthritis of the spine and back, spinal stenosis, spondylosis, a back injury, left femur surgery, and three torn tendons in the left bicep. (Tr. 168). Plaintiff's application was denied initially and upon reconsideration. Plaintiff requested and was granted a *de novo* hearing before ALJ Deanna Sokolski. Plaintiff was represented by a non-attorney representative. Plaintiff and a vocational expert (VE) appeared and testified at the ALJ hearing. On April 17, 2015, the ALJ issued a decision denying plaintiff's DIB application. Plaintiff's request for review by the Appeals Council was denied, making the decision of the ALJ the final administrative decision of the Commissioner.

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).

The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.; Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the

2

claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers,* 582 F.3d at 652; *Harmon v. Apfel,* 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2018.

2. The [plaintiff] has not engaged in substantial gainful activity since January 1, 2013, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The [plaintiff] has the following severe impairments: degenerative disc disease (20 CFR 404.1520(c)).

4. The [plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the [ALJ] finds that the [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he should not climb ladders, ropes and scaffolds; occasionally climb ramps and stairs, kneel, crouch, crawl, and stoop; can perform occasional out-front reaching with the left dominant upper extremity but no overhead reaching with the left dominant upper extremity; he should avoid exposure to all work place hazards such as unprotected heights and dangerous moving machinery; and he should have no concentrated exposure to temperature extremes.

6. The [plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[1]

---

[1] The ALJ relied on the VE's testimony to find that plaintiff had past relevant work as a truck driver, which was performed at the medium level of exertion; van driver, which was performed at the light level of exertion; and tire repairer, which was performed at the very heavy level of exertion. (Tr. 19).

3

7. The [plaintiff] was born [in] 1961 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is 'not disabled,' whether or not the [plaintiff] has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the [plaintiff's] age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1569 and 404.1569(a)).[2]

11. The [plaintiff] has not been under a disability, as defined in the Social Security Act, from January 1, 2013, through the date of [the ALJ's] decision (20 CFR 404.1520(g)).

(Tr. 14-20).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229

---

[2] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative, unskilled occupations such as furniture rental consultant (70,000 jobs nationally), usher (10,000 jobs nationally), and children's attendant (5,000 jobs nationally). (Tr. 20).

(1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746). *See also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

### D. Specific Errors

On appeal, plaintiff alleges two assignments of errors: (1) the ALJ improperly determined that part-time work plaintiff performed was indicative of a capacity to engage in full-time work; and (2) the ALJ failed to include a sit/stand option in the RFC finding. (Doc. 12 at 7-8).

#### 1. The ALJ's consideration of plaintiff's part-time work history

Plaintiff alleges that the ALJ improperly determined that part-time work activity plaintiff engaged in during the period of alleged disability evidenced a capacity to perform full-time work. Plaintiff testified at the ALJ hearing that he worked up to 3.5 hours a day as a van driver for Ohio Valley Goodwill until August 2014, approximately 20 months after the alleged disability onset date. (Tr. 36-37, 61). Plaintiff testified that he was forced to stop working at that time because he was denied medical clearance based on the medications he was taking. (Tr. 37).

5

Plaintiff notes that the ALJ correctly found in her written decision that his part-time work did not constitute substantial gainful activity and that he had not engaged in substantial gainful activity since the alleged onset date of January 1, 2013. (Doc. 12 at 7, citing Tr. 14). However, plaintiff alleges that the ALJ erred at subsequent steps of the sequential evaluation process by deducing from his ability to work part-time during the period of alleged disability that he could have performed full-time work and that his allegations of debilitating pain and other symptoms were not fully credible. (*Id.*). Plaintiff acknowledges that he may have been able to continue working part-time but for his failure to obtain medical clearance; however, he alleges that his ability to work part-time is not indicative of his capacity to perform sustained work activity. (*Id.*). Plaintiff suggests that the ALJ's finding that he could work full-time is inconsistent with Social Security Ruling 96-8p, which defines RFC as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis," which means "8 hours a day, for 5 days a week, or an equivalent work schedule." SSR 96-8p, 1996 WL 374184 (July 2, 1996).

      Plaintiff has not shown that the ALJ erred by drawing improper and unsubstantiated inferences from the part-time work activity he performed during the period of alleged disability. Contrary to plaintiff's position, the ALJ did not simply infer from plaintiff's ability to work a reduced number of hours that he could perform work on a sustained, full-time basis. Rather, the ALJ determined that plaintiff's part-time work activity was one of several factors that negatively impacted plaintiff's credibility because that activity was inconsistent with his allegations regarding the extent of his pain and limitations. (Tr. 19). The ALJ properly took plaintiff's daily work activity into account when assessing his credibility under the Social Security regulations and rulings, which provide that the ALJ is to consider the following factors in assessing a

6

claimant's credibility: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186 (July 2, 1996).[3] *See also Miller v. Com'r of Soc. Sec.*, 524 F. App'x 191, 194 (6th Cir. 2013)(ALJ did not error by considering ability to maintain part-time employment as one factor relevant to disability determination). The ALJ reasonably determined that plaintiff's part-time work activity was inconsistent with his allegations that he spent the bulk of his day "lying down and watching television" and that he was restricted to sitting for approximately 1.5 hours and standing for 20-30 minutes before having to change positions and to walking for 20 minutes total in an 8-hour workday. (Tr. 19; *see* Tr. 49-50). The ALJ's finding that plaintiff's part-time work activity was inconsistent with his allegations of debilitating pain and functional restrictions is supported by substantial evidence, and the Court must therefore defer to it. *Walters v. Comm'r. of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (the ALJ's credibility findings "are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility," but must be supported by substantial evidence).

---

[3] Effective March 28, 2016, SSR 96-7p has been superseded by SSR 16-3p, 2016 WL 1119029, which "provides guidance about how [the SSA] evaluate[s] statements regarding the intensity, persistence, and limiting effects of symptoms." *See* 2016 WL 1237954 (clarifying effective date of SSR 16-3p). There is no indication in the text of SSR 16-3p that the SSA intended to apply SSR 16-3p retroactively, and the Ruling therefore does not apply here. *Accord Cameron v. Colvin*, No. 1:15-cv-169, 2016 WL 4094884, at *2 (E.D. Tenn. Aug. 2, 2016).

The ALJ also found that presumably plaintiff would have still been working as of the date of her decision had his employer medically cleared him, which further called his credibility into question. (Tr. 19, citing Tr. 510). This aspect of the ALJ's credibility finding is likewise substantially supported by the record. Plaintiff testified at the ALJ hearing that he stopped working because he was unable to get medical clearance, but he vaguely added he was "not sure" if he could have continued to perform the job because it was "getting pretty tiring getting in and out of the van" and pulling himself up was "working on [his] shoulder more than it should have." (Tr. 37). Insofar as plaintiff meant to suggest that a worsening of his symptoms played a role in ending his part-time employment, the record does not support plaintiff's allegation. Plaintiff treated with Dr. John E. Beresh, M.D., and other providers at Dr. Beresh's pain management practice beginning in March 2012. (Tr. 406-55, 458-64, 465-501, 502-521, 527-35). The treatment notes reflect that on July 31, 2014, less than three weeks before plaintiff stopped working, plaintiff complained of only "mild" pain (2-3 out of 10 on the analog pain scale)[4] and reported that he was "happy with his care." (Tr. 513-14). Plaintiff stated that his medications provided 40% relief for 24 hours and allowed him to perform his activities of daily living and have a better quality of life with no somnolence or driving impairment. (*Id.* at 514). On September 29, 2014, approximately one month after he stopped working, plaintiff continued to complain of only mild pain (4 out of 10) and he reported that his medications gave him 60% relief for 3 to 4 hours. (Tr. 509). Plaintiff reported that he was off work until he was off methadone because of work regulations. (*Id.*). The treatment notes document that plaintiff's employer had not accepted a letter from Dr. Beresh giving plaintiff medical permission to drive;

---

[4] The treatment records characterize pain in the 1-4 range as "mild." (Tr. 513).

therefore, a medical plan was formulated to wean plaintiff from methadone. (*Id.*). When plaintiff was seen two months later on November 24, 2014, he reported that his pain was 4-6 out of 10, his pain medications (methadone and narcotics) provided 40% relief for 24 hours and allowed him to perform his activities of daily living and have a better quality of life with no somnolence or driving impairment, and he felt the best he had felt in 12 years with these medications. (Tr. 506-07). There is no indication in the treatment notes that plaintiff's pain or other symptoms were precluding him from working as of this date. To the contrary, the notes report that plaintiff was encouraged to work elsewhere in light of his medication prohibitions, but plaintiff's response to the suggestion was he had submitted 315 applications before landing the Goodwill job. (*Id.* at 507).

These treatment records provide substantial support for the ALJ's findings that plaintiff's part-time work activity was inconsistent with his self-reported complaints and limitations, and that plaintiff presumably would have continued to perform that work but for his failure to obtain medical clearance. The ALJ did not err by taking these factors into account when assessing plaintiff's credibility. Plaintiff's first assignment of error should be overruled.

### 2. The ALJ's failure to include a sit/stand option in the RFC finding

Plaintiff alleges as his second assignment of error that the ALJ erred by failing to include a sit/stand option in the RFC finding. (Doc. 12 at 7-8). Plaintiff contends that a sit/stand requirement was consistent with his testimony that he could sit for 1 to 1.5 hours at a time or 4 hours total, stand for 20 to 30 minutes, and walk for 20 minutes in an 8-hour workday. (*Id.* at 7, citing Tr. 19). Plaintiff suggests that the ALJ erred by discounting his testimony regarding these limitations on the ground the restrictions were inconsistent with the physical demands of his part-time driving job. Plaintiff alleges there was no inconsistency between the limitations he

testified about and the functional requirements of his job because the driving job allowed him to shift from a sitting to a standing position. Plaintiff further argues that his need to alternate positions is "reasonable" because he had complained to his medical providers about "sharp pain" that radiated through his buttocks and into his legs, causing numbness in his lower extremities. (*Id*. at 8).

Plaintiff has not identified any medical evidence from a treating, examining or non-examining physician or other medical source that documents a restriction on his ability to sit and stand for any period of time as he alleges. Plaintiff cites to numerous treatment records from Dr. Beresh and other providers at his pain management clinic documenting complaints of pain and symptoms that plaintiff believes support these limitations. (Doc. 12 at 3, citing Tr. 410, 413, 416, 423, 426, 429, 432, 449, 463, 467, 473, 479, 485, 487, 490, 493, 506, 509, 513, 516). However, plaintiff relies almost exclusively on his subjective statements about these limitations as set forth in the treatment records, which the ALJ did not fully credit. In fact, Dr. Beresh opined in a questionnaire he completed in June 2013 that plaintiff's "[lower back] pain is subjective," and he did not identify any abnormal findings supporting those complaints. (Tr. 458-59). Plaintiff has not cited to any other medical opinion that supports a different conclusion and assesses functional restrictions that the ALJ ignored. Nor has plaintiff explained why the ALJ's finding that he can perform a range of light work is not supported by substantial evidence. Even if the evidence in the record could arguably support a different RFC finding, that is not a basis for reversal here given that the evidence substantially supports the ALJ's conclusion. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Further, plaintiff has not shown that the ALJ erred by rejecting his allegations about the severity of his physical impairments and the debilitating nature of his symptoms as less than

fully credible. The ALJ discounted plaintiff's subjective complaints of pain and debilitating symptoms for the following reasons: (1) the treatment records documented "relatively normal findings on examination," which the ALJ thoroughly discussed in her written decision; (2) treatment records showed that plaintiff's pain was "generally well controlled with treatment intervention, including medication"; (3) plaintiff's complaints were inconsistent with his own reports of his activities of daily living, including his part-time work as a van driver after the alleged onset date; and (4) plaintiff stopped working as a part-time driver only because his employer refused to certify him based on his pain medications. (Tr. 18-19). Plaintiff challenges only the ALJ's finding that his complaints were inconsistent with his part-time work activity. As the Court has determined in connection with plaintiff's first assignment of error, the ALJ reasonably found that plaintiff's part-time work activity was inconsistent with his testimony that he spent the bulk of his day lying down watching television and that he was limited to sitting for 1 to 1.5 hours, standing for 20 to 30 minutes, and walking for 20 minutes in an 8-hour workday. (*See* p. 7, *supra*). Plaintiff has shown no error in this regard.

The records plaintiff cites do not show that the ALJ's credibility finding was deficient in any other respect. The treatment records document that plaintiff consistently complained of only mild pain (Tr. 410-11, 413-14, 416-17, 423-24, 426-27, 429-30, 449-50, 462-64, 467-68, 479-80, 485, 509-10, 513-14), and he only occasionally rated his pain as slightly more intense at 4-5 or 5 out of 10 (Tr. 432-33, 487-88, 490-91, 493-94, 506-07, 516-17). These treatment notes show that plaintiff consistently reported that his medications gave him significant relief for 3 to 4 hour periods, they enabled him to perform his activities of daily living and work part-time, and they improved his quality of life, function and sleep. The records do not reflect that plaintiff's condition significantly deteriorated at any point, including around the time that plaintiff stopped

11

working, or that his symptoms made it difficult for him to sit and stand without alternating positions. The ALJ reasonably relied on medical records showing that plaintiff obtained substantial relief from his medications to discount his testimony regarding his pain and his limitations. *See Smith v. Commr. of Soc. Sec. Admin.*, 564 F. App'x 758, 764 (6th Cir. 2014) (citing *White v. Commr. of Soc. Sec.*, 572 F.3d 272, 287 (6th Cir. 2009) (upholding credibility determination where the medical records showed that the plaintiff responded well to medications and therapy, contrary to her assertions).

Plaintiff has not shown that the ALJ erred by failing to include a sit/stand option in the RFC finding. Plaintiff's second assignment of error should be overruled.

**IT IS THEREFORE RECOMMENDED THAT:**

The decision of the Commissioner be **AFFIRMED**.

Date: 2/23/17

Karen L. Litkovitz
United States Magistrate Judge

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

NORMAN WILLIAMSON,
Plaintiff,

Case No. 1:16-cv-583
Barrett, J.
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
Defendant.

## NOTICE

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. This period may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas* v. *Arn,* 474 U.S. 140 (1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).